**TULIP COMPUTERS INTERNATIONAL B.V., Plaintiff,**

v.

**DELL COMPUTER CORPORATION, Defendant.**

Civ.A. No. 00–981–RRM.

United States District Court, D. Delaware.

Oct. 2, 2002.

Steven J. Balick, Ashby & Geddes, Wilmington, DE, for plaintiff.

Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, for defendant.

### MEMORANDUM ORDER

THYNGE, United States Magistrate Judge.

This memorandum will address the various discovery related motions filed by Dell and argued before the court, for the most part, on September 4, 2002. On August 9, 2002, Dell filed a motion for reconsideration of this court prior ruling on July 26, allowing the deposition of Michael Dell. *D.I. 272.* Tulip responded on August 13, 2002. *D.I. 279.*

Pursuant to the directions from this court during the telephonic conference of July 25, 2002, Dell filed a motion to compel the production of documents withheld on the allegedly improper basis of privilege, to compel supplementation of Tulip's allegedly inadequate privilege log and to overrule Tulip's objections to Dell's Letters of Request. *D.I. 274, 275, 276.* Tulip filed a response on August 23, 2002. *D.I. 291, 292.*

Between the filing of the aforesaid motion by Dell and Tulip's response, Dell filed

5 additional discovery motions on August 19: Tulip's alleged refusal to provide contact information for former Tulip employees; Tulip's inadequate response to Dell's interrogatory no. 16 in which Dell seeks information regarding Tulip's review of archived documents in response to Dell's request for production; Tulip's refusal to provide a corporate representative to address Tulip's allegation that Dell acquired Tulip technology from Unisys; Tulip's refusal to produce materials that were provide Russell Parr, one of Tulip's testifying expert witnesses; and alleged deficiencies in Tulip's responses to Dell's request for admissions. *D.I. 282–286.* All of these matters, Dell expected to discuss during the oral argument on September 4 (under the guise of judicial economy), which was originally scheduled to address only the privilege log issues. Further, on August 23, Dell filed another discovery matter, the alleged interference by Tulip with Dell's attempt to depose a former Tulip employee, Mr. Duynisveld. *D.I. 289, 290.* Tulip responded to this flurry of additional discovery dispute matters on August 30 and September 3, respectively. *D.I. 296, 297.*

No doubt, the aforementioned is an example of the somewhat tortured discovery history between these two parties. *See, D.I. 174, Memorandum Opinion.*[1]

### Dell's Motion for Reconsideration, D.I. 272

■ Dell's motion is directed to the scope of Michael Dell's deposition. Dell argues that during the July 25, 2002 hearing, Tulip requested for the first time to depose Mr. Dell about "issues surrounding what Dell's method and Dell's strategy for whether or not they developed technology internally versus using other people's technology." According to Dell, since Tulip's motion to depose Mr. Dell had previously been limited to his role in determining the specific design of the alleged infringing products, Tulip has failed, for this additional area, to meet its burden to establish that Mr. Dell has "unique or superior personal knowledge of discoverable information," as required under *Liberty*

---

1. And the saga continues. See *D.I. 302, 305 and 307* filed in September 2002 regarding Mr. Mur-tha.

*Mutual Ins. Co. v. Superior Court,* 10 Cal. App.4th 1282, 13 Cal.Rptr.2d 363, 366–67 (1992). Tulip responds that Dell's request is baseless under the Federal Rules for this type of relief. Further, Dell's request is an inaccurate representation under the "Apex" line of cases.

When faced with the issue of whether Mr. Dell would be deposed, the primary evidence on which this court relied were the lab notes and testimony of Mr. Clark and the e-mails within the engineering group, authored by Mr. Schwartzbott. Unlimited delving into Dell's method and its strategy of developing technology internally versus using other's technology does not necessarily "go to the heart of the issue" nor results in "a straight-forward deposition." Exploring with Mr. Dell his conversations or contacts with Mr. Clark as related in Mr. Clark's notes, exploring what was recorded, the engineering group e-mails, his "directive" or the phasing out of the ISA technology by Dell and his affidavit and exploring his knowledge regarding the information contained in Mr. Riddle's affidavit and the retention of information on his computer are all within the parameters addressed during the teleconference. .Further, Tulip will be allowed to explore with Mr. Dell the extent of his involvement and his knowledge regarding defendant's method and strategy of developing the technology that is in issue in this case.

### Dell's Motion to Compel Production, D.I. 274

In its argument, Dell outlined 6 groupings for certain documents that it is requesting. Group 1 are all documents in which Frans Dietz is either an author or recipient. Mr. Dietz is a Dutch patent attorney, and a member of the firm, Vereenigde, who prosecuted the European patent on behalf of Tulip and

provided assistance to Peter Michaelson, Tulip's patent counsel, in the prosecution of the '621, the U.S. counterpart. Group 2 relate to documents authorized or received by Mr. Murtha, who is associated with Fairfield Resources, a company in the United States in the business of servicing clients in intellectual property and licensing issues. He provided assistance to Tulip in its patent licensing efforts in this country and had been initially contact by Ruprecht Hermans, Tulip's Dutch attorney.[2] Group 3 relates to documents authored or received by Cees Stulemeijer, Tulip's in-house legal counsel, who had previously worked with the VanDoorne law firm (Dell's counsel in Holland). Group 4, consisting of 3 documents regarding communications with W.E.M. ten Cate, whom Dell asserts that Tulip has not identified as a lawyer.[3] Group 5 comprises of documents sent to Tulip Computers International B.V. where the specific recipient is not identified. Group 6 are documents sent to or from Vereenigde where the specific author or recipient is not identified. According to Dell, regarding Groups 1 through 3, it is not requesting any documents sent to or from any of Tulip's licensed attorneys, as Dell defines licensed attorney, but is requesting documents in which a licensed attorney was merely copied or when an attorney is listed in Tulip's "attorney" column as contained in Tulip's second supplemental privilege log. As to Groups 2 and 3, Dell claims that it has also excluded documents created after July 31, 2000, based on Mr. van den Berg's testimony that litigation as of July 2000 was not imminent. Mr. van den Berg is the CEO of Tulip. Based upon Dell's presentation during oral argument on September 4, 2002, the court estimates that approximately 151 documents have been requested to be produced from Tulip's privilege log.[4]

---

**2.** An additional dispute has arisen between the parties regarding Mr. Murtha. On September 9, 2002, Tulip provided an affidavit with attachments from Murtha directed to the beginning of his involvement with Tulip in 2000 and the arrangement that existed between his company and Tulip prior to entering into a compensation agreement. *D.I. 302,307.* Dell, in response, argues that Murtha's declaration conflicts with his prior deposition testimony, upon which it relied during oral argument on the privilege log issue on September 4, 2002.

**3.** According to Tulip's second supplemental privilege log, W.E.M. ten Cate is identified as an attorney. *D.I. 276, Ex. 2; D.I. 292, Ex. E.*

**4.** The number of documents and the document numbers Dell identified in its written submissions differs from the list provided at and discussed during oral argument. The court's number is based upon the groupings represented by Dell during oral argument. Based on the court's calculations, there are 42 documents comprising Group 1 (# 10, 18, 21, 25–30, 33–36, 38–41, 46–

■ Dell's arguments regarding Dietz (Group 1) and for Stulemeijer (Group 3), as well, focus primarily on the fact that neither are admitted to a bar of any court in the Netherlands, based on Dell's interpretation of Article 165 of the Netherlands Code of Civil Procedure, which addresses those individuals entitled to invoke the privilege of non-disclosure and the application of the Dutch case *Bruil v. Tital International, NJ 1989, 563.*[5] *D.I. 276, fn. 13 and Ex. 4, 5.* Further, Dell also relies upon the declaration of Julius Pinkaers, an advocate (that is, an attorney at law) and the Netherlands Supreme Court decision of *Algemene Bank Nederland v. State, December 22, 1989, NJ 1990, 779. See, D.I. 276 Ex. 4, 4C.*

According to the similar translations by the parties, in *Bruil,* the issue addressed was whether under the circumstances, could a patent attorney claim immunity as a witness. The Dutch court relying on Article 191 of the Code of Civil Procedure (now Article 165) determined that where the patent attorney goes beyond the performance of his specific duties, that is, providing assistance with the patent application, the privilege of non-disclosure under Article 191 did not attach. In that case, the court specifically stated that it was not addressing the situation where knowledge was acquired by the counsel in his specific capacity as a patent attorney. *D.I. 276, Ex. 5.* According to that case, the court determined that the patent attorney could not claim the right of non-disclosure because he performed services outside the realm of his specific activities, although he had promised secrecy to his client.[6]

The *ABN* case involved appeals from decisions by the appellate court dealing with civil servant witnesses and non-civil servant witnesses. In both, the witnesses had invoked the non-disclosure privilege. The Dutch Supreme Court determined that Section 191.2 did not impose a statutory obligation of secrecy for all civil servants, finding distinctions which were based upon the weighing of certain considerations. More importantly, the court held that for the protection to attach to any witness, it must be provided by a statute which embodies the privilege of non-disclosure.

The statute in question, now Article 165 of the Code of Civil Procedure, provides initially that a summoned witness has the obligation to testify. However, under paragraph (2) certain individuals can invoke the privilege of non-disclosure and specifically, pursuant to subsection (b), that privilege attaches to "those persons who are obligated to maintain confidentiality *as a result of their profession* with respect to information which has been entrusted to them *in the capacity of their profession.*" *D.I. 276 4A.* (emphasis added). Contrary to Dell's argument that the absence by the Dutch court in *Bruil* to comment whether the statute applies to patent attorneys is indicative of its intent not to extend the privilege of non-disclosure to such counsel, the decision states that it was not directed to the situation where a patent attorney obtained knowledge when acting in that capacity. *Bruil* found that regarding knowledge or information obtained when patent counsel was not providing assistance with a patent application, the privilege did not attach. If Article 165(2)(b) did not apply to patent attorneys, the Dutch court could have easily so stated and based its opinion on that

47, 50–52, 54–57, 62, 66 104, 106–110, 113–15, 117–18, 122–23, 311); 49 documents make up Group 2 (# 124, 136, 138–43,147–52, 155, 157, 162, 165–67, 169–73, 175–76, 178–81, 184, 209, 238, 240, 242–44, 246, 249, 251, 255–60, 284); 21 documents in Group 3 (# 127, 139, 141–43, 146, 150–52, 169, 173, 176, 178–80, 227, 240, 243–44, 246, 249); three documents in Group 4 (# 20, 58, 59); 12 documents contained in Group 5 (# 24, 31, 37, 42, 48, 49, 61, 68, 112, 116, 120–21); and 25 documents included in Group 6, with an overlap of a document from Group 5 ( # 7, 12, 13, 22, 24, 31–32, 37, 43–44, 49, 53, 60–61, 65, 67–70, 105, 111–112, 119, 121, 164). Dell, however, also argues that all documents on

Tulip's privilege log should be produced, as discussed *infra.*

**5.** Two translations of this case have been provided to the court by Dell. The second one from Dell is very similar to the interpretation provided by Tulip. *Compare D.I. 228, fn. 2 with D.I. 276, Ex. 4B.* It is the similar translations that the court relied on.

**6.** The attorney had served as a witness to a licensing agreement. Moreover, according to the Pinckaers declaration at paragraph 10, the patent attorney involved gave his oath or promise *before* he was registered as a patent attorney.

finding. The fact that the Dutch court made the effort to distinguish the situation it was addressing from the circumstances where counsel was providing assistance with a patent indicates that patent counsel fall within the protection of 165(2)(b) when acting within the capacity of their profession. Therefore, based on the cases provided, this court finds that under Dutch law, the statutory privilege of non-disclosure under Article 165 applies to patent attorneys for information or knowledge imparted or entrusted to them when providing assistance with a patent application.

The above finding only addresses part of the issues raised in Dell's motion. Determining the proper law to apply in matters involving communications with foreign patent attorneys is another part of the analysis.

■ This court has adopted the "touch base" test. *See Willemijn Houdstermaatschaapij B.V. v. Apollo Computer, Inc.,* 707 F.Supp. 1429, 1444–45 (D.Del.1989) (hereinafter referred to as *Apollo*). Under this test, communications that relate to activity in a foreign country are governed by that country's privilege law, while communications that "touch base" with the United States are controlled by United States privilege law. *Id.*

> If the communications related to the prosecution of a patent in the agent's native country and would be privileged under the laws of that country, the attachment of the privilege depends on the laws of that country; in other words, federal courts will apply the principles of comity. However, if the communications 'touch base' with the United states, U.S. privilege law applies.

*Id.*

Under *Apollo,* the following categories did not touch base with the United States: communications regarding formulating licensing and enforcement policies for a European patent and providing advice on possible infringement; communications that address matters of foreign patent law; and communications produced by or on behalf of a foreign patent agent relating *solely* to matters outside the United States. *Id.* at 1445–46. However, the fact that such matters do not touch base with the United States, and therefore, are not subject to this country's privilege protection (attorney-client and attorney work product, for example), does not mean that they are not subject to any privilege. Such conduct may very well be subject to protection under the applicable country's law and this court will apply the principles of comity, and thereby, apply the protections allowed under the laws of a foreign country.

Regarding whether a communication is protected under the attorney client privilege for documents that "touch base" with the United States, this court has long recognized the principle established in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357 (D.Mass.1950). *See Rhone–Poulenc Rorer, Inc v. Home Indem. Co.,* 32 F.3d 851 (3d Cir.1994); *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.Del.1977). The court considers whether:

> 1) the asserted holder of the privilege is or sought to become a client; 2) the person to whom the communication was made a) is a member of the bar of a court, or his or her subordinate, and b) in connection with this communication is acting as a lawyer; 3) the communication relates to a fact of which the attorney was informed a) by his client b) without the presence of strangers c) for the purpose of securing primarily either i) an opinion of law or ii) legal services or iii) assistance in some legal proceedings, and d) not for the purpose of committing a crime or a tort; and 4) the privilege has been a) claimed and b) not waived by the client.

The burden of justifying the refusal to produce documents on the basis of privilege falls on the party asserting the privilege, whether it is attorney client or work product. A party claiming privilege is required to make a proper showing that the criteria under *Hercules* has been met. *Apollo,* 707 F.Supp. at 1442.

As to Tulip's privilege log, Dell, argues, in general, that it is deficient in numerous respects, including inadequate identification of authors and recipients and inadequate description of communications. Regarding the Murtha documents (Group 2), Dell contends that communications prepared by business

people, such as Murtha, were not prepared in anticipation of litigation and therefore, are not privileged. Regarding Groups 5 and 6, Dell contends that Tulip cannot claim privilege for communications prepared or received by unidentified people. Since Tulip has failed to satisfy its burden of establishing the privileges that it has asserted, Dell demands production of all documents on Tulip's privilege log. Alternatively, Dell requests Tulip produce the documents identified in its motion, as subsequently limited during oral argument, which Tulip has improperly withheld based upon an inappropriate claim of privilege.

In response, Tulip argues that communications by or with Mr. Dietz involving Tulip's U.S. patent counsel, Michaelson, or counsel of record are privileged; that Dietz's communications are privileged under Dutch law; and, that Dietz's communications regarding the European patent are not relevant. Regarding communications involving Murtha, those are privileged and/or protected from disclosure under attorney work product, since Murtha was acting at the direction of Tulip's counsel. Specifically, document 181 contains handwritten notes of Murtha recording a conversation involving himself, Stulemeijer and Hermans. According to Tulip, and contrary to Dell's representation, there are only 24 documents that do not involve Tulip's licensed attorneys or are dated prior to July 31, 2000. Tulip also contends that Dell's complaints about lack of specificity in Tulip's privilege log are meritless. *D.I. 291.* Regarding Dell's complaints concerning the documents in Groups 5 and 6, Tulip cannot identify any particular individual because none is named within the document. Moreover, Federal Rule 26(b)(5) does not require identification of a specific recipient. Some of these documents involve invoices or other incidental information relating to the services provided by Vereenigde and were not directed to specific individuals. Some of the documents identified by Dell, are privileged communications between Michaelson with the Vereenigde law firm. Regardless of whom Michaelson was communicating with at the Dutch patent firm, such contacts are privileged since Vereenigde was providing services to Tulip or acting as its agent in the firm's communications with Michaelson regarding the filing and prosecution of the '621 patent. As a result the touch base requirement with the United States is met and privilege under our law attaches.

Tulip suggests that Dell's complaint regarding inadequate identification of individuals contained in its log is specious. As a result of this litigation, Dell is or should be familiar with their identities.

Both parties cite a number of cases, from various jurisdictions, in support of their respective positions.[7]

Both parties reference the *Apollo* case as supporting their arguments. As noted previously herein, *Apollo* addressed the "touch base" issue. It also discussed the information required when raising a claim of privilege. Although in *Apollo* for certain inadequate descriptions, the court ordered production of the documents,[8] for the most part, the court reserved ruling on production of the various groups of documents until after an *in camera* review.

*Union Pacific Resources Group, Inc. v. Pennzoil Company,* No. 97–64–JJF (D.Del. August 12, 1997), relied upon heavily by Dell, dealt with whether a privilege log met the standards imposed by Federal Rule of Civil

---

7. Which reinforces this court's belief that anyone can find a case anywhere in support of any discovery position; hence, strong evidence that judicial discretion exists regarding discovery matters.

8. In deciding to hold the plaintiff to its representations made on its privilege list, the court distinguished between descriptions provided for similar types of documents. The court referenced descriptions of transmittal letters and the sharp contrast between those identified as requesting "legal advice, comments and instructions" from those where no such designation was provided. *Apollo,* 707 F.Supp. at 1443. The absence of any description compared to when one was provided lead the court to conclude that the plaintiff knew "how to characterize a document correctly when it compiled its list" and was now "seeking to make changes only to escape producing the documents requested." *Id.* However, implicit in this conclusion was that the descriptions, as noted herein, when provided, were adequate.

Procedure 45(d)(2).[9] This matter was a miscellaneous action filed in this court by the defendant in a matter pending in the Northern District of Texas against a non-party to the Texas action. In that matter, Pennzoil argued that the inadequate privilege log by the third-party constituted a waiver of any available privilege, and thereby required the non-party to produce all the documents contained on the log. In the alternative, Pennzoil requested that the non-party be ordered to produce, on an expedited basis, an adequate privilege log. This court detailed what was required under Rule 45 concerning the identification of "author" and "recipient." It was not clear in *Union Pacific Resources Group,* unlike the present case, whether the defendant was familiar with the identities or responsibilities of the individuals contained in the third-party privilege log.

This court also addressed the description or narrative of the subject matter needed to establish that the document is relevant and material to the factors considered when determining whether a claim of privilege should be upheld. However, found acceptable by the court were descriptions, such as, the documents were a legal opinion of in-house counsel regarding X transaction. The court had no problem with the abbreviated approach of "AC" or "WP" as a description of the type of privilege asserted, absent the other deficiencies noted and as long as it did not appear to be merely a ministerial listing of AC/WP for each document. However, the remedy was not the draconian approach demanded by Dell, that is, the wholesale denial of all privilege and production of all listed documents. Although the court granted Pennzoil's motion to compel, it did not require the production of any document, but

ordered the submission of a revised privilege log.

Undoubtedly, Dell is or should be familiar with the identifies of the individuals contained in Tulip's privilege log. Moreover, based upon this court's review of the applicable Dutch law, contrary to Dell's argument, privilege attaches to Dutch patent counsel when performing activities in his profession, that is, when providing assistance with a patent application. Further, for those matters that touch base with the United States, protection will be afforded to Dutch patent counsel's activities, when applicable, either under attorney-client or attorney work product.

As noted in *Apollo,* when the designation of privilege is challenged, usually the party asserting the privilege provides the court (and thereby opposing counsel) through affidavits, particularly in the absence of adequate deposition testimony, with more detailed information regarding the activities and identities of those persons contained on the privilege log. Further, via affidavits or declarations, the court is educated regarding the responsibilities and involvement of those persons on the privilege log, as well as being provided with a clearer picture for the basis of the privilege. Although a number of depositions were taken, no testimony was identified by either party that sufficiently addressed that information. The details of the activities and identities of certain individuals was primarily proffered by Tulip's counsel in its briefing and argument. No affidavits were filed by Tulip, except after oral argument.

Therefore, Dell shall identify five documents from each of the following groups:

9. The rule applicable to the present matter is 26(b)(5). Although similar, 26(b)(5) and 45(d)(2) are not exactly the same. Both require that one raising privilege "make the claim expressly." However, under Rule 26(b)(5), the description of the documents or communications not produced or disclosed are to be made to enable other parties to *assess* the applicability of the privilege, without revealing the information to which the claim of privilege is made, while 45(d) requires the description of the nature of the documents or communications to be sufficient to enable the demanding party to *contest* the claim. Rule 26(b)(5) apparently recognizes that details concerning time, persons, general subject matter and the like may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed as privileged, while the comments to Rule 45(d) are silent on this matter. *Advisory Committee Notes.* This slight difference may be in recognition that the usual application of Rule 45 involves a party obtaining limited information from a non-party, while Rule 26 is directed to the parties involved in the litigation, where other discovery avenues are available (and used) to provide the routine identification information inherent to understand a privilege log.

Group 1 (Dietz), Group 2 (Murtha), Group 3 (Stulemeijer) and Group 6 (Vereenigde) and three documents from Group 5 (Tulip Computers International B.V.) consistent with the list Dell provided to the court during oral argument on or before October 10, 2002. Tulip shall produce the identified documents to the court on or before October 15, 2002, along with all three documents listed in Group 4 (W.E.M. ten Cate) for *in camera* review.

**Dell's request for a more complete response to Interrogatory No. 16, D.I. 282**

■ Dell complains that Tulip's response to Dell's interrogatory no. 16 is inadequate. Attached to Dell's letter of August 19, 2002 is Tulip's original response of August 8, 2001 which essentially objected to the interrogatory on the basis of attorney work product and attorney client privilege. Not attached to Dell's letter was Tulip's supplemental response of December 7, 2001, which Tulip attached to its response letter of August 30, 2002.[10] Based upon the information provided by both parties, it does not appear that Tulip's answers or responses to interrogatory no. 16 became an issue until after the telephonic conference with the court on July 25 and an argument date was set for the privilege issue addressed in D.I. 274. Nor was this matter raised during the July 25 teleconference. Rather, this issue was raised eight months after the supplemental response was filed and approximately two months after the close of fact discovery. For these reasons alone, the court is inclined to deny Dell's request.

In support of its position, Dell relies upon *Manville Sales Corp. v. Paramount Systems, Inc.*, 118 F.R.D. 420 (E.D.Pa.1987). In *Manville*, the court found that the extensive and multiple part interrogatory sought only the identification of individuals and documents and not the contents of the documents obtained or mental impressions of counsel, the objection was overruled.[11]

Unlike the finding in *Manville*, Dell's interrogatory is not limited to only the identification of individuals and documents, Dell's interrogatory requests a "description of the review undertaken by Tulip, or its representatives, counsel or agents" of those documents and things stored by Tulip in any archive location. What Dell literally is requesting are the steps taken by or on behalf of Tulip, including by its counsel, whenever any "review" occurred.

Absent the fact that Dell's interrogatory is unlimited in time, it is not seeking what Dell suggests that it is—identification of documents and individuals. It is seeking a process employed apparently after litigation began. What steps were taken regarding any such review fall within the parameters of attorney client privilege and the attorney work doctrine. Therefore, Dell's request is denied.

**Dell's request for contact information for certain former Tulip employees, D.I. 283**

This issue was resolved during oral argument. Tulip will provide the contact information for those individuals by Monday, September 9, 2002.

**Dell's request regarding Tulip's responses to Dell's Requests for Admission, D.I. 284**

Dell essentially argues that most (if not all) of Tulip's responses to its Requests for Admission should be overruled.[12]

■ Under Fed.R.Civ.P. 36, a party may serve another party with written requests for admission of the truth of the matters relevant to the pending action. *See, Rule 36(a)*. The purpose of Rule 36 is to both facilitate proof and to narrow the issues. Requests for admission should be phased so that they may be admitted or denied with minimal commentary.[13] A party is not required to

---

**10.** Dell failed to provide the court with a complete picture of the responses that had been filed regarding this interrogatory.

**11.** This court does not necessarily agree that the interrogatory in question in *Manville* did not indirectly request the contents of documents or the mental impressions of counsel.

**12.** In its letter of February 15, 2002, Dell appears to have withdrawn requests no. 9, 10, 19, 21, 24, 27 and 30. *See, D.I. 295, Ex. 8.*

**13.** It, indeed, has been the rare circumstance that this court has seen *any* response to a request not include a compendium of objections with or without an actual answer.

respond to a request containing vague or ambiguous statements. 7 James Wm. Moore, et. al. *Moore's Federal Practice* § 36.10[6] (3d ed.1997).

■ Moreover, requests that seek legal conclusions are not allowed under Rule 36. *Id.* at §§ 36.10[7] and 36.10[8]. As a result, determining whether a patent is valid would call for a legal conclusion although dependant on factual inquiries. *See, Golden Valley, Microwave Foods, Inc. v. Weaver Popcorn Company, Inc.,* 130 F.R.D. 92, 96 (N.D.Ind.1990). Similarly determining whether a product or process infringes or whether infringement has occurred involves the requirement of claim construction, which is a legal determination within the province of the court. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). As a result, requests directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper.

Although Tulip noted objections to all of the requests in Dell's first Requests for Admissions, it provided answers to each, by either denying or admitting. The two requests that Tulip did not provide answers to were Requests no. 9 and 10, both of which were withdraw pursuant to Dell's February 15 letter. In addition, these requests are not appropriate since they ask for legal conclusions. Therefore, Dell's motion as it relates to its first set of admission requests is denied.

■ Reviewing Dell's second set of admission requests, its demand for more adequate responses is directed to nos. 41–45. Request no. 43 was answered by Tulip. Requests numbered 41, 42 and 44 all rely upon what the alleged invention claimed in the patent-in-suit is—are the requests directed to Tu-

lip's, Dell's or the court's interpretation of the claim language? It would appear that any admission or denial would neither facilitate the proof nor narrow the issues at trial. The same problem exists with request no. 45. Therefore, Dell's demand for more adequate responses to these requests is denied.

■ Regarding Dell's third set of admission requests, again it is demanding that more adequate responses be provided or that the requests be considered admitted. Tulip's responses were filed in May 2002. As with the other discovery motions addressed in this order, Dell's letter motion regarding this discovery was not filed until August 19, 2002. Moreover, Dell did not initially complain about Tulip's responses by letter until July 2 (mailed two days before the holiday weekend). Similar to the other requests, these, in general, ask for conclusions of law, and additionally often contain compound statements. Therefore, Dell's request regarding its third set of requests for admissions is denied.

**Dell's request concerning the Unisys issue, D.I. 285**

Dell argues that Tulip has refused to provide a 30(b)(6) witness to testify regarding Tulip's contention that a course in which the subject matter of any claim was communicated to Dell was through the Unisys CWP Series workstations, as evidenced by Tulip's answer to Dell's contention interrogatory no. 20. Tulip responds that this issue arose solely because of the questions posed to Mr. Muller by Dell regarding Tulip's OEM arrangement with Unisys.[14] Presently, Tulip has no information or evidence that Dell learned about Tulip's patented technology by examining a Unisys OEM computer. As a result, according to Tulip, it has no information to produce to Dell.[15] Further, Tulip claims that Dell has objected to its discovery and refused to produce a 30(b)(6) witness regarding this issue.

**14.** Although the court's reading of Dell's questions of Mr. Muller does not necessarily lead to the same conclusion as Tulip's counsel, the court accepts that the questioning could have suggested that Dell may have had access to an early Unisys OEM computer which may have been a source of Dell's knowledge of Tulip's technology.

**15.** However, Tulip notes that Ontrack is set to produce to Dell the output from Dell's electronic files. One of the search terms used was "Unisys". Until that production occurs, Tulip cannot represent that this issue is closed.

It would appear that the request by Dell is premature; it also appears that Tulip presently does not have a basis supporting its contention as contained in its response to interrogatory no. 20. It also appears that until production of the information via Ontrack occurs, Tulip's support for this contention is tenuous at best and basically nonexistent. Therefore, once the Ontrack documents are produced to Tulip for review, this issue may die a natural death. Tulip shall advise the court and Dell by letter within seven days after receipt of the Ontrack documents whether the claim that the subject matter of the patent-in-suit was communicated directly or indirectly from Tulip to Dell by public disclosure of Tulip's design through the Unisys CWP Series workstations in its response to interrogatory no. 20 will be withdrawn and, if not, shall within five days thereafter provide an updated answer to this interrogatory, including the identification of documents supporting this contention and identify a 30(b)(6) witness for deposition on this subject.

**Dell's Request regarding Mr. Parr (Tulip's expert), D.I. 286**

Dell's argument focused on the lack of any information contained in Mr. Parr's materials regarding the information provided by Mr. Donaldson, whom Mr. Parr had consulted in determining a reasonable royalty rate. During the August 16 teleconference, Tulip represented that Mr. Donaldson did not have any files, notes or information regarding his discussions with Mr. Parr. During oral argument on this issue, Tulip represented that Mr. Parr had no notes of his conversation with Donaldson. This issue was resolved during argument. Mr. Parr's declaration is due by September 11, 2002.

As a result of the discussions that occurred relating to Mr. Parr, this order shall serve as a reminder to the parties of their obligations under Rule 26(a)(2)(B).

Therefore, IT IS ORDERED that:

Dell's discovery motions (D.I. 272, 274, 282 through 286) are denied in part and granted

in part consistent with this Memorandum Order.