ORGANON INC. and AKZO
Nobel N.V., Plaintiffs,

v.

MYLAN PHARMACEUTICALS,
INC., Defendant.

Organon Inc. and AKZO Nobel
N.V., Plaintiffs,

v.

Teva Pharmaceuticals USA,
Inc., Defendant.

Organon Inc. and AKZO Nobel
N.V., Plaintiffs,

v.

Alphapharm Pty, Ltd., Defendant.

No. CIV.A. 01–2171(FSH), CIV. A.01–
3835(FSH), CIV.A. 01–2682(FSH),
CIV.A. 01–4246(FSH).

United States District Court,
D. New Jersey.

Feb. 17, 2004.

Kevin J. McKenna, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, Newark, NJ, for Plaintiffs/Counter Defendants.

Brian D. Romanowsky, Harwood Lloyd, LLC, Hackensack, NJ, Allyn Zissel Lite, Lite, Depalma, Greenberg and Rivas, LCC, Arnold B. Calmann, Saiber, Schlesinger, Satz & Goldstein, Esqs., Newark, NJ, for Defendants/Counter Claimants.

## OPINION & ORDER

HOCHBERG, District Judge.

This matter calls upon the Court to decide a legal issue of first impression under the laws of the Netherlands. That question is whether documents noticed by Defendants in 2002 to be produced by Organon's Dutch patent agents[1] are presumptively entitled to be privileged in the same manner as would a patent attorney's confidential communications, absent an applicable exception to the attorney-client privilege doctrine.

On April 4, 2003, the Dutch legislature enacted amendments to the Dutch Patent Act. The relevant section states:

---

1. A Dutch patent agent is a licensed professional admitted to practice before the Dutch Patent Office pursuant to the Dutch Patent Act and the rules and regulations thereunder. A patent agent's tasks include, *inter alia,* assisting clients in the preparation of patent applications before the Dutch Patent Office. Under the Dutch Patent Act, a patent agent may also appear in a court of law to represent his client in patent matters as long as his client is also represented by an official court representative.

Unless otherwise under or pursuant to the law, a patent agent or an individual working under such agent's supervision, is obligated to observe confidentiality regarding all that of which the agent becomes aware pursuant to his activities. This obligation remains in force after termination of the relevant activities.

Memorandum of Amendment. The amendments became effective on May 1, 2003.

In light of the April 4, 2003 Dutch legislation regarding patent agents' privilege under the Dutch Patent Act, this Court has vacated Magistrate Judge Chesler's Order and its own affirmance thereof[2] to review *de novo* the issue of whether the Dutch patent agents' documents asserted as privileged must be produced. There is no doubt that the documents, if demanded today, would be cloaked with a privilege, absent an applicable exception to the attorney-client privilege. However, the Defendants demanded the documents in 2002. Thus, the issue at bar is whether the April 4, 2003 Dutch legislation regarding patent agents constitutes a newly created privilege that did not previously exist, or whether it is a codification of an existing privilege that had been recognized by the Dutch legal system through implication and common practice. Under the applicable choice of laws doctrine, this Court shall consider the law of the Netherlands in determining the appropriate legal principles that will apply. This issue would be one of first impression for the Dutch Supreme Council (the "Dutch Supreme Court"), and this Court shall endeavor to interpret Dutch law in the same manner as would the highest court in the Netherlands.

*Dutch Case Law*

The sole Dutch case that touches upon the issue of whether communications of patent agents are privileged when they act within the scope of a patent attorney's functions is *Bruil v. Tital Int'l,* Jan. 5, 1988, NJ 1989, 563. Judge Chesler, in his December 4, 2002 Order, and Magistrate Judge Thynge, in *Tulip Computers Int'l B.V. v. Dell Computer Corp.,* 210 F.R.D. 100 (D.Del.2002), reached two different conclusions based on divergent interpretations of *Bruil.*

In *Bruil,* the Dutch district court held that a patent agent may not assert the privilege of non-disclosure for acts beyond the scope of his specific duties in rendering assistance with respect to patent applications. The court did not expressly discuss the privilege of patent agents acting within the scope of their duties because the case involved a patent agent who was clearly acting outside the scope of his professional capacity as a patent agent. It is *Bruil's* silence, rather than what was explicitly stated, that both Judge Chesler and Judge Thynge considered in reaching their respective conclusions, and both of their decisions pre-dated the legislative enactment in April 2003.

In *Tulip,* Judge Thynge interpreted *Bruil's* silence as follows: "[I]f Article 165(2)(b) did not apply to patent attorneys, the Dutch court could have easily so stated and based its opinion on that finding." *Tulip,* 210 F.R.D. at 103–04. In effect, Judge Thynge found that *Bruil's* silence implied the existence of a privilege for Dutch patent agents. In affirming *Tulip,* the District Court considered the recent amendments to the Dutch Patent Act (*see*

---

**2.** On December 4, 2002, Judge Chesler entered an order compelling the production of the Dutch documents, and this Court affirmed Judge Chesler's order on December 12, 2003.

On January 14, 2004, this Court entered an order vacating Judge Chesler's order and its own affirmance thereof.

*infra* for a discussion of the Memorandum of Amendment) and noted that the amendments "can fairly be read as a codification of existing law, at least as easily as it can be read in the fashion urged by Dell." *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, No. 00–981, slip op. at 2–3 (D.Del. Feb. 10, 2003). Judge Chesler, however, determined that the Dutch court never reached the issue of privilege for patent agents, and therefore, absent an explicit statutory provision, there was no basis to assume that the *Bruil* court recognized that communications with patent agents are privileged.

Defendants have sought to fill the legal void by analogy to a Dutch Supreme Court decision denying privilege for tax consultants, No. 1570 Decision, NJ 1986, 815, May 6, 1986 (hereinafter, "*In re Tax Consultant*"). Defendants argue, by analogy, that the highest court of the Netherlands would regard Dutch tax consultants and patent agents similarly, particularly with respect to whether communications with them are privileged under Dutch law. In *In re Tax Consultant*, the Dutch Supreme Court determined that a tax consultant shall not be accorded the same status as an attorney or a notary and, therefore, is not entitled to the privilege that would exempt him from testifying. *In re Tax Consultant*, Judgment on the Plea, ¶ 4.3. Defendants contend that the same analysis should apply to patent agents, pointing out that both tax consultants and patent agents share similarities as professional groups, both of which have private codes of conduct that require them to safeguard the privacy of their client's communications. Defendants argue that, because Dutch law in 1986 did not recognize the

privilege for tax consultants, this Court should decide that patent agents likewise had no confidentiality privilege under Dutch law prior to the legislature's enactment of the April 2003 Memorandum of Amendment. *See infra* for a discussion of the Memorandum of Amendment.

In reaching its decision, the *In re Tax Consultant* Court reasoned that "it must be borne in mind that the tax consultant group is not homogenous and there is no law to exclude anybody from working as a tax consultant.... Under these conditions, the tax consultant cannot be counted among the previously mentioned group of confidants who are entitled to the right not to have to testify." *Id.* at ¶ 4.4. The absence of legal restrictions limiting who can qualify as a tax consultant was an important aspect of the Court's decision. Because "anybody" could work as a tax consultant, a sweeping exemption shielding tax consultants from testifying would undermine "the public interest of having the truth see the light in court." *Id.* at ¶ 4.2.

The Dutch "exemption from testifying" is highly analogous to the privilege of confidentiality. Indeed no party to this case has argued otherwise. The highest court of the Netherlands accords this privilege "to a limited group of people who, by their office or profession, are held to secrecy about all that was confided to them because of their status and whose social function implies that ... each person can freely, and without fear for disclosure of what was communicated, approach them for help and advice." *Id.* Patent agents in the Netherlands are regulated by provisions of the Dutch Patent Act, which limits by concrete criteria who may become patent agents.[3] Accordingly, because Dutch pat-

---

3. The fact that the Dutch legislature adopted an explicit statutory privilege for communications with patent agents—and was silent as to tax consultants—further supports the conclu-

sion that Dutch law did not equate patent agents and tax consultants as similar professional groups.

ent agents are a homogenous group of professionals that is regulated by a statute, this Court holds that the courts of the Netherlands would find that patent agents are within the definition of a "limited group" distinguished from tax consultants by the *In re Tax Consultant* Court.[4]

*Dutch Statutory Law*

Pursuant to the State Act of June 13, 2003 and a royal decree dated April 4, 2003, the Dutch legislature enacted amendments to the Dutch Patent Act that state unequivocally that Dutch patent agent's communications are entitled to a privilege similar to the attorney-client privilege accorded to patent attorney's communications in the United States. On May 1, 2003, statutory provisions governing the privileged nature of communications with patent agents became effective. Accordingly, "a patent agent or an individual working under such agent's supervision, is obligated to observe confidentiality regarding all that of which the agent becomes aware pursuant to his activities." Memorandum of Amendment, No. 6, 27 193 (R1658), ¶ 4.

In the accompanying explanation, the legislature likened the patent agent's obligation of confidentiality to that of attorneys and civil-law notaries.[5] Memorandum of Amendment, Explanation. Moreover, the obligation of confidentiality extends internationally to cover both European patent agents and patent agents in the United States, as the legislature so clarified:

If the obligation did not apply to Dutch patent agents, they could be forced, under certain circumstances, to disclose trade secrets, for example in a court case, while patent agents from other countries remain exempt from that obligation.

*Id.*

This Court must decide whether the statutory privilege enacted in 2003 creates a privilege for patent agents that did not exist in 2002 (when the document demand was made by Defendants), or whether it codifies in express terms a privilege that had been tacitly recognized for years. There is little to guide this Court in answering this inquiry. Although the Dutch legislature adopted the amendments on June 13, 2002, the record indicates that the legislature had received the amendments as early as the 2000–01 parliamentary year—if not earlier. Memorandum of Amendment, Heading.

The legislative enactment does not itself provide guidance on the issue posed. The *Bruil* decision in 1988 implied, without expressly stating, that the privilege applies to patent agents if their communications are "within the scope" of a patent agent's traditional function of applying for patents. The *In re Tax Consultant* decision in 1986 clearly recognized that the privilege existed for certain groups with defined criteria for membership and concomitant social policy goals. Thus, the dictum in *In re Tax Consultant* suggests that, to the extent that patent agents meet such criteria, they would have been deemed to be cloaked with the privilege at least as far back as 1986, if the issue had been put before the Dutch Supreme Court.

---

4. While United States law is not the applicable substantive law on this issue, this Court notes that such a distinction would also parallel the distinction made in United States law between lawyers and accountants with respect to privileged communications.

5. Based on representations made to this Court by Defendants during oral argument on January 14, 2004, a civil law notary in the Netherlands is a lawyer.

*Testimony of Dutch Law Professors*

This Court also considers the certifications of Dutch law professors retained by both sides as experts. Organon proffers the testimony of Professors Willem A. Hoyng, C.J.J.C. van Nispen, and Jan B.M. Vranken to explain that a confidentiality privilege existed for patent agents for many years and that Dutch courts would have recognized the privilege absent an explicit statutory provision so stating. Professor Hoyng states that the amendments are "nothing more than an explicit confirmation of the law as it already existed prior to the enactment of that provision." According to Professor van Nispen, the amendments constitute a confirmation of existing law, not a promulgation of new law. Finally, Professor Vranken states that Dutch courts would apply pending legislation to protect communications that occurred prior to the effective date of the legislation.

Defendants's expert, Professor Charles Gielen, asserts that, had the legislature meant to clarify the existence of a privilege for patent agents, the Memorandum of Amendment would not have stated that "if the obligation did not apply to Dutch patent agents, they could be forced ... to disclose trade secrets ... while patent agents from other countries remain exempt from that obligation." The quote elaborated upon by Professor Gielen is part of the Explanation in the Memorandum of Amendment, in which the State Secretary of Economic Affairs expressed why the Dutch legislature felt it necessary to codify the privilege of patent agents, lest "they could be forced ... to disclose trade secrets." *See supra* for a discussion of the Memorandum of Amendment. This passage does little to rebut the conclusions of Professor Hoyng, van Nispen, and Vranken that the privilege was recognized by Dutch courts prior to the explicit statutory enactment in 2003.

*Conclusion*

Upon considering and weighing all materials before it, including the rulings in *Bruil, Tulip* and *In re Tax Consultant,* the Memorandum of Amendment, and the certifications of the Dutch professors, this Court finds that the confidentiality privilege existed for patent agents under Dutch law, even prior to the enactment of explicit statutory provisions stating such a privilege in 2003.[6]

Under principles of comity, this Court shall recognize the privilege accorded to patent agents under the laws of the Netherlands. However, Defendants may obtain the otherwise privileged Dutch documents if they succeed in establishing that: (1) a particular document is not a communication that would have been covered by the attorney-client privilege in the first instance; or (2) that an exception, such as the crime-fraud exception, applies. A procedure will be established to review the documents to determine which, if any, are not protected by the privilege.

Accordingly, **IT IS** on this 17th day of February 2004, hereby

**ORDERED** that the Plaintiffs prepare and submit to Magistrate Judge Shwartz a translated set of the documents claimed to be privileged; and it is further

**ORDERED** that the parties shall comply with the procedure set up by Magistrate Judge Shwartz to identify: (1) any asserted privileged documents that fall under an exception to the attorney-client privilege doctrine; and (2) any documents

---

**6.** Moreover, in the instant case, this Court sees no strong interest in disparate treatment of document requests in the same case based solely upon whether the request was propounded before or after May 1, 2003.

that pertain to activities beyond the scope of the Dutch patent agents' traditional duties in applying for patents or are otherwise not within the scope of the attorney-client privilege; and it is further

**ORDERED** that Organon's Emergency Motion on Short Notice to Stay the Order of December 12, 2003 is administratively terminated.